On March 4, 2010, Douglas Johnson was advised in the grand jury that he could be charged as a defendant in this case. The district court's conclusion that a vague and offhand remark by the AUSA just prior to those advisements What is this offhand? What does that mean? A casual remark. How do you know that? That it's offhand or casual? Or, you know, that it wasn't considered? Well, it was certainly vague. The court found that Mr. Johnson testified that the AUSA on the case at the time, Mr. Flynn, said, just tell the truth and everything will be okay. Moments before... If you're not the target of the investigation, just tell the truth and you'll be okay. The comment before the grand jury, I believe, was just tell the truth and everything will be okay. And then in the grand jury, he said, you're not a target at this time. The investigation is ongoing, and you could be named as a defendant in this case. Well, it appears that the government's concern on some level is that obviously witnesses are nervous before they go in, and the government's concerned that if you just tell someone, just don't, just calm down, just tell the truth and you'll be fine, is that then that will negate everything else. But it appears that Judge Mendez looked at some other circumstances, and he looked at what happened to another defendant that had a lawyer and had taken notes of what went on, and that guy didn't get charged. He also looked at Mr. Flynn, said he never he wouldn't have charged Mr. Johnson, and Mr. Flynn did not take any notes. So there's nothing — I think Mr. Johnson was pro se at the time. And the Court was concerned that Mr. Johnson was at the bottom of the totem pole of all of this, and so everyone else is fine, and then — and the district court seemed to believe Mr. Johnson that — what he said. So there's some credibility findings. So looking at the, you know, where's the clear error here? How do we disregard what Judge Mendez did? Because I didn't see the witnesses. Your Honor, I think that is a correct assessment of the district judge's view of the case. If you look at the order itself, it's not clear entirely what exactly he credited of Doug Johnson's statements. There are a number of statements that Doug Johnson made throughout the proceedings, including a declaration submitted prior to the hearing, which — parts of which he later recanted during his oral testimony. The order itself, though, focuses just on the one statement that Mr. Flynn said to Mr. Johnson before going into the grand jury, which is, just tell the truth and everything will be okay. The objective record shows that that was immediately followed by advisements that were clear, unequivocal and explicit that he could be charged as a defendant. He wasn't a target at this time, but the investigation was ongoing and he could be charged. So the issue — Well, but it's kind of like blah, blah, blah, blah, blah. You know, a lot of times, I don't — you know, we don't understand — I didn't understand some jury instructions after reading them for 20 years. And then you just sort of, if he said, well, don't worry, it's okay, you'll, you know, just tell the truth, and then blah, blah, blah, blah, blah, and then Mr. Flynn wasn't going to — he wasn't going to charge him and still doesn't think he should be charged, right? That is what Mr. Flynn's testimony is. But Mr. Flynn's intention is not dispositive of whether or not there was a binding contract in this case. And the government submits that it is a legal issue of whether those words that judgment has found, coupled with the so-called prior interactions, actually created a contract. That's the legal issue. And the government submits that that's not enough to create a non-prosecution agreement, especially in light of the advisements, which Mr. Johnson testified he did understand. Well, it seems that the government's argument is sort of similar to what I would call defendants' arguments a lot of times. They want to parse everything out and say, well, it's just this, it's just that. It's not the totality of the circumstances. And the totality here is that this, what, Mortimer, he — because he's got a lawyer and the lawyer — you were going to — the government was going to charge him, and then the lawyer said, but wait, wait, wait, I've got some notes here. And why would the government have given that — why would he get a deal and Mr. Johnson wouldn't get a deal? Because Mr. Johnson's lower, right? I think there's reasonable minds could dispute about which is more culpable. However, the interactions with — I think the whole analysis, regardless of Mr. Mortimer, has to be looked at — whether or not there was a contract is a legal issue. And it is governed by — that determination is governed by contract principles. And the interactions between the government and Mr. Mortimer were — are basically, in short, irrelevant to what — Well, I don't know how can they be, because the totality of the circumstances as to what's the interplay between when you hear your rights in the grand jury and then you were told before — you know, you were told, don't worry, you know, just tell the truth, it'll be okay, you're told you're not a target, and then the other person who happened to have a lawyer and has notes, it may not be dispositive, but how can we pull everything out of context? Because I don't think Judge Mendez did. Well, when you're analyzing whether or not there is a contract, though, the first principle is whether there is a promise. Analyzing whether there's a promise. Correct. Right. Okay. It doesn't have to be an actual contract. It has to be a promise on which somebody relies. That's correct. The government submits that this is not a promise. It's too vague to be a promise. And what was happening with Mr. Mortimer — What's vague? What's vague about just tell the truth and you'll be okay? What's vague about that? What does okay mean? You don't know — I mean, it's not reasonable for somebody to think if I tell the truth nothing's going to happen to me. Well, it's too vague to be a promise. It could mean a number of things. It could be a word of assurance. It could be a promise not to prosecute Mr. Johnson for perjury if he did tell the truth in the grand jury. It could be a promise perhaps not to prosecute him for obstruction. It could be — it's not even clear that there's a promise at all. But if it is a promise, it's not clear what the promise is. Is it a factual determination to determine whether or not that amounts to a promise or an offer? Those words amount to an offer or a promise? Is that a question of fact? I believe it's a legal determination, Your Honor. There are conflicting laws on whether the formation of a contract is a matter of factual determination or legal determination. You just said it doesn't have to be a formation of a contract. All it has to be is a promise. But that is a legal determination. Whether it's a promise that could be an enforceable promise is a legal determination. What is your best case that holds somewhere in this area that words of this nature don't amount to an offer or a promise? I think an analogous case is — well, there are two. One is United States v. Wilson, 392 F. 3rd, 1055. In which the government said, I sure as hell can't grant you immunity, and you know that. And he repeatedly and without question told the agent he was powerless to grant him immunity. I mean, the agent was told that the agent was powerless to grant immunity. And the court found that Wilson wasn't credible. That's your best case? I'm sorry, I didn't hear the question, Your Honor. I said, with those facts that they told him, I sure as hell can't grant you immunity, and you know that. And they repeatedly told him the agent was powerless to grant immunity, and the court found that Wilson was not credible. That's your best case? Well, there were two. The fact that Wilson, I believe, is analogous insofar as there is objective evidence that immediately after that comment was made, Mr. Flynn advised Mr. Johnson that he could be charged as a defendant. Additionally, in the case of Goodrich, there was a promise to dismiss the indictment if they could get one of the defendants out of Mexico. But this court found in that case that that promise was also too vague. It wasn't clear what was promised, what the defendant had to show to get the indictment dismissed. They initially showed an alibi, I think, on June 2nd. But then the indictment, they recharged the defendant with an overt act on the following day, June 3rd. So even though they had gotten him out of there. I didn't remind you, although it's not my function to do it, but you wanted to leave two minutes and you've already exhausted all your time. If you want to stop, it will be one minute. Unless, I mean, I will reserve two minutes unless the court has further questions. Well, Your Honor, overtime is what he's saying, so he'll give you one minute. Okay. If you stop talking now. Okay. Thank you, Your Honor. Good afternoon. My name is Tom Johnson. I'm here for the appellee, Doug Johnson. Are you related? I thought someone might ask that I'm not related. But as we know, it's a common last name. Fundamental fairness requires that promises made during plenary bargaining and analogous context be respected. Doug Johnson testified before a federal grand jury on March 4th, 2010. He was told three times he was not a target of the investigation. He was told, quote, just tell the truth and everything will be okay. Eighteen months later, thinking that the entire matter was resolved as to him, he learned that he was indicted. I am here this afternoon to ask you to affirm the decision of the district court. I'd like to start with how Judge Mendez reached his decision. Well, first of all, were you a trial counsel? I was, Your Honor. You didn't raise this business in the district court, did you, that the government promised immunity? I mean, Judge Mendez thought of that on his own, right? The hearing was a bit free-flowing in the sense we were trying to determine what Mr. Flynn, what the assistant U.S. attorney said. You never made a motion to dismiss because your client was granted immunity, right? Originally, the motion to dismiss was based upon a theory of misconduct. So the answer to my question is yes? Yes. So, I mean, this was Judge Mendez's idea. So you even didn't think it was a promise originally, did you? It may have been Judge Mendez's idea in that sense, Your Honor, but it was also the right decision and the right place to be at the end of the hearing when all of the evidence came out. What's your response to the government's position that after the defendant was told, well, you know, go in and tell the truth and everything will be okay, right? And that was when he was still outside the grand jury room, apparently. Just as he was going into the grand jury room, or in the grand jury room, he was given the formal warning, right? He was. About, you know, you're still subject to prosecution and so forth. Yes, Your Honor. And I think the government says, well, you know, that in effect, you know, officiated any, you know, promissory characteristic of the prior informal comment. Yes, Your Honor. So let me talk about that for a second. Mr. Johnson was the subject of an investigation. He wasn't the target, he was told. I don't even know the difference between subject and target. How does Mr. Johnson know that? Well, Mr. Johnson — I mean, what you understand is you could be prosecuted. Yes, Your Honor. I think what Mr. Johnson understood was this. He understood that his facility was under investigation by the Department of Justice, and this is in the record. He also understood it was a criminal investigation. An agent went to go speak with him, and this is in the record at the hearing in front of Judge Mendez, an agent by the name of Ornberg. He asked the agent, do I need an attorney? The agent e-mails the assistant U.S. attorney saying, Doug Johnson is worried about having an attorney, and does he need one? And Mr. Johnson was given no response to that whatsoever, and before he gets a grand jury subpoena, and he isn't and was, and this came out in the — That's a contested fact, though, isn't it? Mr. Flynn doesn't remember that, right? That's true. That's true. However, there was, I believe, an exhibit that demonstrated that. Mr. Flynn really had a vague memory of the entire interaction. The government can't say today, as they did in their brief, that he had a firm memory. He did not have a firm memory. It's Mr. Johnson that had the firm memory. He's never been — he's never testified before a grand jury before. He was nervous, and he asked Mr. Flynn the question, am I okay here? Is everything okay? At that time, he didn't have counsel, did he? He had no counsel. He's just a technician at an aircraft repair facility. That's the level of his sophistication. Lives in Auburn, repairs aircraft parts. Comes to a federal courthouse and speaks for a federal prosecutor. And in the normal world, those people, those folks, they're very taken and intimidated by people in those positions of authority. And, of course, when he's told that he was not a target, he understands that to mean that he can testify and not be prosecuted. Well, that's not what the words said, though. So it really isn't — what is relevant for us to consider in deciding this? I think that the government made the point that — that it couldn't be a promise just if you tell the truth, you're going to be okay, that that just couldn't be. Would you agree that that alone would not be enough for a promise? I don't — I don't agree with that, Your Honor, because when you tell a person if you tell the truth everything is going to be okay, how would a person, a normal person who has no connection to the legal community, interpret that? They would interpret that — Well, if that were then — and I think what they raised in their brief, if people are always nervous going to court and just say, well, if you tell the truth, you'll be okay, that certainly is not the same as some sophisticated agreement. I mean, on the scale of it, it's about as weak as it's going to get. But that's what the government is saying. That isn't enough. Are you saying we can look at more? What are you saying — I'm saying — All goes to our decision here. Yes, Your Honor. What the government would like the court to believe is that the entire decision of the district court, which was a factual finding which should be reviewed for clear error, was based upon that one phrase, if you just tell the truth, everything will be okay. But that leaves out the fact that he told an agent that he was worried and whether he should have an attorney. He was told three separate times — Did Judge Mendez make a credibility finding? He did, Your Honor. In his order at page 5, he said, after careful review of the record as well as case law presented by both parties, the court finds there was an agreement not to prosecute Defendant Johnson. The court finds Defendant Johnson's — the court finds Defendant Johnson's testimony credible, even in light of the government's attempt to discount his recollection of the interaction with the assistant U.S. attorney outside the grand jury room. So Doug Johnson did testify, as did Mr. Flynn, over the course of the day. And Judge Mendez had a complete and fair opportunity to see both of the witnesses and assess their credibility. And on that basis, he found Mr. Johnson credible. And I know Her Honor knows that in a trial court, people's credibility looks different than it does on paper. Well, right. We're not looking at — we're not looking at those witnesses. But Judge Mendez was, Your Honor, and he found Mr. Johnson credible. And that's because he must have thought that Mr. Johnson must have believed, based upon his interaction with Mr. Flynn, the assistant U.S. attorney, that he was not going to be prosecuted. Well, I think the government's position, it doesn't make any difference what Johnson believes. I mean, it's, you know, the object — I think this is the government's position — the objective meaning of the words. And the government says those words, as a matter of law, cannot — do not amount to a contract. When I say those words, I mean, you know, just tell the truth and everything will be okay. It's just too vague to be a contract. And, Your Honor, if you take it out of context, of course they can make the argument. But when put in context, being told three times that he was not a target, and even in the grand jury room, while he was being advised of his rights, Mr. Flynn stopped in the middle of his rights and said, but you are not a target. What about — go ahead. Yes, Your Honor. What about Mr. Mortimer? So — The government basically has said it's basically irrelevant. What's your position about how that figures into whether there was a promise? So, Your Honor, Mr. Mortimer was not — Because he is a different person. Yes. And a whole — and he had an attorney, and it was a different conversation. And we all know that you can make a deal with one person and another person doesn't have a deal. Mr. Mortimer was not at the level of Mr. Johnson. He was a supervisor of a facility in Burbank. He was not at the Auburn facility. He was in Burbank. He was a supervisor. And he was told the same thing Mr. Johnson was told, and in the interim period between March and September of 11, when the indictment was handed down, he secured counsel and got an immunity agreement. And Mr. Flynn testified, and the judge found this credible, that he never intended to indict Doug Johnson. That was never his intention. So what he communicated to Mr. Johnson had to have been, in some way, shape, or form, a promise not to prosecute. Because that — Well, he didn't say, I promised him. He just said, I never intended to indict him. Right? So that's — it's a little different. Yes, Your Honor. But he followed through on that understanding, his own mindset, that he was not going to ever prosecute Mr. Johnson. Well, let's say, though, if the language were really clear that there was no promise and he said, I never — you know, I didn't make a promise, and the judge believed that he didn't make — another prosecutor can come in and look at the evidence differently. You're not saying that just because one prosecutor didn't — didn't go after someone that another one can't. You're just saying in this instance. That's correct, Your Honor. Because, I mean, people do look at the evidence differently all the time. That happens in all law offices, Your Honor, and I think — I think my time — oh, I have 14 seconds. And then — You've got to give back 18 seconds. It happened — We're in overtime. It happened, Your Honor, because Mr. Johnson relied upon the statements of Mr. Flynn. Mr. Flynn acted as he told Mr. Johnson he would act. Mr. Johnson relied upon that. And the court was asking the government earlier, why can't — couldn't Mr. Flynn have done that? He had the authority to do that. He was an assistant U.S. attorney. And he had the power, the authority, and he did what he had the power to do and caused this reliance by Mr. Johnson, which ends up with Mr. Johnson being indicted. It was — and the other thing that Judge Mendez was concerned about was just the sheer competency of the office. One prosecutor decides, I'm not going to prosecute this man. He testified for me. It wasn't just that he testified, Your Honor. He advanced their case. This was a — Well, I think he — I think going competency — I think he did say words like fairness. He didn't think it was fair. But as much as we all like to be fair, sometimes our job — that fairness and reaching a legal conclusion aren't always the same thing. Yes, Your Honor. I think — As our law says, as a general rule, fundamental fairness requires that promises made during plea bargaining in an analogous context be respected. So fundamental fairness does play a role in our analysis of these cases, but it still requires a promise. And if you tell someone, if you do something, you'll be okay, and then you try to execute him, and he said, well, I meant you wouldn't be prosecuted for perjury, I think you wouldn't have much of a problem with saying he's not going to be okay. He may not know exactly what will not, but you go in and they say you testify, you'll be okay. What does that mean? It doesn't mean you're going to live a long life without cancer. It has to do with what's going to happen to you in the legal process. Yes, Your Honor. But I don't want to take any more of your opponent's time because — Yes, Your Honor. — you've taken two and a half minutes of nonexistent time. Then I should — Yes. Then I'll sit down. Unless Judge Callahan, do you want him to? No. Thank you. Thank you, Your Honor. Thank you again, Your Honors, for the extra minute. Two points. One, in talking about the credibility finding, the government urges to read that narrowly, and it has to be read narrowly because if it's read too broadly, it just doesn't make any sense. During the hearing, Mr. Johnson recanted several statements that he had made in a prior declaration. And as Mr. Johnson, Mr. Tom Johnson, mentioned, the judge also found portions of Sean Flynn's testimony credible. So I think the plain words of the order are limited to this statement, and the finding is based on this statement. Don't just tell the truth, coupled with prior interactions. And with respect to fundamental fairness, there has to also be a detrimental reliance on the promise. So first you have to have the promise, assuming you have it. In this case, we contend you don't. But even if you did, there has to be detrimental reliance. Mr. Johnson came to the grand jury pursuant to a subpoena. He — and the record is clear, and I can give you cites that — He could have taken the Fifth Amendment. He could have, Your Honor. Well, he could have gotten a lawyer, too, which he testified that he got kind of a shrug from. So is it possible that Judge Mendez believed that that was part — you know, that he could have — you know, that Mr. Flynn said that? It's possible. It's not in the order, and I don't think it — it doesn't play any role in the contract  Well, it could, because then you — if you had gotten a lawyer, then a lawyer would be taking notes as to exactly what was going on, and you might be in the same condition that Mr. Mortimer was in, as opposed to the condition he found himself in. The problem is that that leads you down a line of speculation, and you — and whether or not a contract existed or a promise existed has to be made based on objective evidence in the record. And in this case, the objective record shows that the AUSA who indicted the case actually did not know that Mr. Doug Johnson had testified before the grand jury, so he could not have relied on any of the incriminating statements, or he did not rely on any of the incriminating statements in bringing the indictment. And I think that he had even abandoned any argument that he would rely on those throughout the prosecution. All right. Your time is well enough. Thank you, Your Honors. Thank you. Thank you. The argument will be submitted.
judges: Reinhardt, Tashima, Callahan